## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINIOS
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL DILLON and MARC KAFKA, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiffs,<br><br><br>        vs.<br><br><br>WELLS FARGO SECURITIES, LLC<br>                                    Defendant. | Case No.:<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs, Michael Dillon and Marc Kafka ("Plaintiffs"), allege the following based upon the investigation by their counsel, which included, among other things, a review of the public documents and announcements made by LJM Funds Management, Ltd. ("LJM Management") and LJM Partners Ltd. (collectively "LJM Partners"); documents of record including available pleadings concerning LJM Management, LJM Partners, and Defendant Wells Fargo Securities, LLC ("Wells Fargo"); and information readily available on the Internet. Plaintiffs believe that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      This is a class action brought by Plaintiffs individually on their own behalf and on behalf of a Class comprised of all persons who held: (1) shares in the LJM Preservation and Growth Fund (defined below) on February 5 and 6, 2018; and (2) limited partnership interests in any of the Partnership Funds (also defined below) on February 5 and 6, 2018 (the "Class Period").

2.      Plaintiffs allege that Wells Fargo caused them to suffer more than $500 million and as much as $800 million in realized losses when, without any right to do so, Wells Fargo forced

the immediate liquidation of their investments early in the morning on February 6, 2018.

3.       As alleged in more detail below, Wells Fargo, in the early morning hours on February 6, 2018, acting recklessly in bad faith and without any right to do so ordered LJM to completely and immediately liquidate the entire Portfolio (defined below), which directly and proximately caused the certain and irreversible losses to the Plaintiffs and all other Class members of more than $500 million and as much as $800 million.  Shortly thereafter, Wells Fargo also made a margin demand of $16.4 million on LJM, asserting the right to collect millions of dollars under the terms of an agreement, which Wells Fargo had previously terminated.

4.       Also as alleged herein, Wells Fargo acted precipitously, recklessly, and with willful malfeasance following a volatility sell-off on February 5, 2018.  Wells Fargo engaged in extreme bad faith conduct with the foreseeable - and indeed, certain consequences that it would irreversibly destroy the interests of  Plaintiffs and thousands of investors who were the owners of or investors in the Portfolio.

5.       The claims asserted herein cannot be asserted by the Preservation Fund (and Growth defined below) or the Partnership Funds (also defined below) because they have been liquidated and terminated due to the acts of Wells Fargo, and the Plaintiffs have standing to bring these claims including on behalf of the Funds.

6.       In 2018, Wells Fargo brought an action against LJM Investment Fund, L.P., and LJM Partners, captioned *Wells Fargo Securities, LLC v. LJM Investment Fund, L.P., et al.*, No. 18-cv-02020 (LTS). On July 13, 2021, LJM and certain affiliated entities filed a Second Amended Answer and Counterclaims against Wells Fargo. LJM's counterclaims do not assert these claims on behalf of the Preservation Fund, all the Partnership Funds, Plaintiffs, or the members of the Class, and do not seek damages in that litigation to compensate Plaintiffs and the Class members

fully for their enormous realized losses of more than $500 million and as much as $800 million.

## CERTAIN NON-PARTY ENTITIES

7.      The Preservation and Growth Fund ("Preservation Fund") was a public mutual fund that invested primarily in call and put options on Standard & Poor's 500 Futures Index ("S&P"). The Preservation Fund had three share classes, but all three classes had the same underlying portfolio of assets. The Preservation Fund traded under the ticker symbols LJMIX, LJMAX, and LJMCX.

8.      As a direct and proximate result of Wells Fargo's actions on February 6, 2018, the Preservation Fund was closed to new investors on February 7, 2018.  Due to Wells Fargo's actions described below, the Preservation Fund had to be liquidated on March 29, 2018, and its remaining assets were distributed *pro rata* to all shareholders.  All outstanding shares of the Preservation Fund were redeemed and cancelled, and the fund was dissolved.

9.      LJM Fund, L.P., PFC-LJM Preservation and Growth Fund, L.P., and the LJM Preservation and Growth Fund, L.P.(collectively, the "Partnership Funds") were organized as Delaware limited partnerships and as commodity pools engaged in the trading of commodity futures, contracts, options on futures, and forward contracts on exchanges and markets in the United States. The Partnership Funds were subject to regulations of the Commodity Futures Trading Commission ("CFTC") and the Rules of the National Futures Association ("NFA").

10.      As a direct and proximate result of Wells Fargo's malicious actions on February 6, 2018, the Partnership Funds had to terminate operations.  They were liquidated and were terminated and dissolved beginning on or about February 28, 2018.

11.      Prior to their dissolution, LJM Partners, Ltd., ("LJM Partners") was the General Partner of LJM Investment Fund, L.P. ("LJM"), the commodity pool that was responsible for managing investment activities of the Partnership Funds.  LJM and LJM Partners are organized

under the laws of the State of Illinois and at all material times maintained their principal place of business in Chicago, Illinois.   LJM was and is a registered commodity pool operator and commodity futures advisor with the CFTC.

12.     Prior to its dissolution, LJM Funds Management, Ltd. ("LJM Funds Management") was the investment advisor to the Preservation Fund and was responsible for managing the Preservation Fund's investments.  LJM Funds Management is a corporation organized under laws of the State of Illinois with its principal place of business in Chicago, Illinois.

13.     On February 6, 2018, Wells Fargo used its control over the Preservation Fund, the Partnership Funds,  LJM and Plaintiffs and all Class members and wrongfully exercised complete dominion and control over the assets of the Preservation Fund and the Partnership Funds (hereinafter the "Portfolio" or the "Portfolio Assets").

14.     Plaintiffs and the members of the Class were the Portfolio investors and owned partnership or other interests in the Preservation Fund and the Partnership Funds and beneficial rights and interests in the Portfolio and the Portfolio Assets.

15.     At all relevant times, Wells Fargo knew the fact that Plaintiffs and the members of the Class were the real parties in interest as they owned partnership or other interests in the Preservation Fund and the Partnership Funds and beneficial rights and interests in the Portfolio and its assets.

## **PARTIES**

16.     Plaintiff  Michael Dillon is an individual and resident of Will County, State of Illinois, who purchased and held an interest in LJM Fund, L.P. during the Class Period.

17.     Plaintiff Marc Kafka is an individual residing in Lake County, State of Illinois, who held an interest in LJM Fund, L.P. during the Class Period.

18.     Defendant Wells Fargo is a Delaware limited liability company that transacts substantial business in this judicial District, related to Plaintiffs and Class members.

## JURISDICTION AND VENUE

19.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the amount of $75,000 exclusive of interest and costs.

20.     The Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because at least one Class member is of diverse citizenship from Wells Fargo, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

21.     Venue is proper in this District under 28 U.S.C. §1391(b) because many of the acts complained of herein occurred or had their effect in this judicial District.

22.     At all material times, Wells Fargo had sufficient contacts within this judicial District and purposefully availed itself of benefits of this District so as to render the exercise of jurisdiction over    it in this judicial District consistent with traditional notions of fair play and substantial justice.

## FACTUAL ALLEGATIONS

23.     During the Class Period, LJM bought and sold options contracts on the S&P 500 futures index. According to LJM, its investment objective was and is to deliver returns to Portfolio investors that would be uncorrelated with the overall performance of the U.S. equity markets.

24.     At all relevant times, Wells Fargo knew the fact that LJM maintained and managed the money it invested for the benefit of Plaintiffs and the other members of the Class, who were the Portfolio investors and the beneficial owners of the Portfolio Assets and proceeds in the various

accounts at Wells Fargo.

25.     The S&P 500 Index is a commonly used and quoted index of large capitalization U.S. stocks, often used to track overall performance of the U.S. equity market. It reflects the value of a basket of 500 commonly traded stocks, weighted by the capitalization of those stocks.

26.     The Chicago Mercantile Exchange ("CME") allows participants to trade S&P futures through contracts to buy or sell a specified future value of the index at a future date. For example, if the value of the S&P Index is currently 4400, a futures contract could set a future value of 4500 for three months ahead, *i.e.*, for "delivery" in May 2022. Market participants choose to "buy" or "sell" the futures contract based on their views on the likely future course of the stock market; in particular, whether such participants think the market is likely to trade higher or lower than the specified future level of the index on the specified future date.

27.     The S&P futures contract market is intended to be a cash market – *i.e.*, purchasers and sellers of the contracts are not expected to buy or deliver the full basket of stocks in the S&P 500, but instead to make or receive payment in cash on the specified date for their equivalent value.

28.     A single S&P 500 futures contract on the CME is valued at 250 times the value of the S&P 500 Index. The CME also offers an "E-MINI" futures contract, which is similar to a regular futures contract, except it is 1/5 the size of the regular S&P futures contract (50 times the value of the S&P index).

29.     Market participants also can buy or sell call or put options on S&P futures contracts. A call option is the right to purchase an S&P futures contract at a specified price (the "strike price") at or before a specified future time (the "expiry date"). A put option is the right to sell the S&P futures contract at the strike price on or before an expiry date.

30.     An options contract – including an options contract on S&P futures – can be "in"

or "out" of the money. An "in the money" options is an option that if exercised today, would return a positive amount of money. An "out of the money" option is an option that if exercised today, would return zero or a negative return. The holder of an "out of the money" option can simply allow it to expire (and thus return zero). At any given time, an option holder can "lock in" existing gains or losses by exiting (selling out) of the position; alternatively, the holder can keep the option up until the expiry date.

31.     According to LJM, with only two exceptions, it only bought and sold options contracts on S&P 500 futures. On two occasions, LJM experimented with direct trades in S&P 500 futures contracts, both times with negative outcomes. Thereafter, LJM ceased trading in E-MINI futures.

32.     For more than two years before February 6, 2018, LJM claims it made no trades in any way utilizing E-MINI S&P futures contracts.

### LJM's Risk Management Techniques

33.     Like many hedge funds, LJM took both "long" and "short" positions in the Portfolio to hedge against market risk – *i.e.*, the risk that equity markets would rise or fall. In LJM's case, that meant purchasing and selling both calls (options to buy at a specified price) and puts (options to sell at a specified price).

34.     LJM managed the short option positions such that at any given time, they were "out the money" – that is, if the current market price of the underlying S&P 500 future remained the same as of the option expiry date, the option would expire without being exercised, or without payment being required by either side of the contract.

35.     During periods of high volatility, the notional (or "paper") value of the Portfolio could be temporarily affected. Throughout its existence, LJM experienced several high volatility

events. When such events occurred, the notional value of the Portfolio declined temporarily, but LJM was able to implement effective risk management protocols to control risks and prevent or minimize actual losses from being realized.

36.     In particular, when volatility spiked, as it did on February 5, 2018, LJM would steadily close out positions over the course of the day, taking care to maintain the hedged nature of the portfolio – *i.e.*, balancing out its exit from both the "long" and "short" position in the Portfolio.

37.     Because volatility events are often very brief – frequently lasting only hours – LJM's protocol protected the capital of the Portfolio while allowing for an orderly exit from trading positions if the event persisted.

38.     Over more than 20 years of managing risk, LJM successfully implemented these risk management protocols on several occasions. For example, in August 2011, LJM experienced notional losses as a result of then record-breaking increases in the VIX volatility index, including a 50% increase on August 8, 2011. The temporary paper losses ranged from -8.31% to 27.58%, but LJM later was able to recover fully from the volatility-related paper losses.

39.     To permit LJM to conduct its options trading, Wells Fargo entered into Futures and Cleared Swaps Agreements with the Partnership Funds, the Preservation Fund, and also with LJM, LJM Funds management, or its affiliates (the "FCM Agreements") under which Wells Fargo was only authorized to provide certain limited non-discretionary and ministerial clearing and execution services as a futures and commission merchant. A true and correct copy of one such FCM Agreement is attached hereto as Exhibit A.

40.     Section 24 of the FCM Agreements provided that the Agreements were terminable upon written notice by either party. In the event of such a termination, LJM had the option of

"promptly" closing out open trades *or* transferring all open positions to another FCM.

41.     The FCM Agreements do not define the word "promptly." However, in this context, the term "promptly" is a commonly understood term-of-art in the industry. Consistent with Rule 2-27 of the National Futures Association, the term "promptly" means the approximately two business days typically required to effectuate a transfer of accounts from one FCM to another.

42.     In the language and structure of the FCM Agreements, the parties clearly intended to use the standard industry meaning of the term "promptly," to establish the timeframe for LJM to effectuate the close out or transfer of open trading positions. The parties could not have intended "promptly" to mean "immediately" because that would render it practically impossible to accomplish a transfer of the account to another FCM, a right the FCM Agreements specifically reserve.

43.     In addition, § 24 of the FCM Agreements requires LJM either to close out or transfer its open positions upon termination.  It does not confer upon or authorize Wells Fargo the right to direct LJM to conduct any specific trades to achieve that end or to order a complete and immediate liquidation of the entire Portfolio  and Portfolio Assets, especially when Wells Fargo had not invoked any event of default.

LJM Faces a Volatility Event

44.     On Monday, February 5, 2018, the stock market declined as the volatility index rose, creating instability in the options market caused by a combination of market concentration and hedge and leverage rebalancing, culminating in a spike in the "VIX," an index reflecting market volatility.

45.     At the time of the volatility event on February 5, 2018, LJM claims in its litigation against Wells Fargo that the Portfolio of the Partnerships and the Preservation Fund consisted

entirely of options positions on S&P 500 futures. LJM claims that the Portfolio did not hold any direct positions – either long or short – in S&P 500 futures contracts, including any E-MINI contracts.

46.     The market conditions on February 5, 2018, resulted in notional losses on LJM's open options positions. However, these losses primarily were unrealized paper losses. In response, LJM traded actively to rebalance the portfolio and offset risk.

47.     In the afternoon on February 5, 2018, LJM began executing risk-reducing trades following its usual protocol.  However, those trades were not fully processed by the executing brokers and were not reflected in statements of LJM's accounts with Wells Fargo that day.

48.     LJM suffered significant unrealized losses on February 5, 2018. However, if market conditions recovered (as they did in a matter of hours by the afternoon of February 6, 2018), LJM was well-positioned to recover much of the paper losses it had suffered, and even to make a substantial profit. If the market conditions deteriorated, LJM was in the best position to limit the scope of the losses by implementing its tried-and-tested risk management protocol for such events. Unfortunately, all those well-laid plans went awry due to the precipitous, willful and unjustified interference by Wells Fargo.  In fact, Wells Fargo engaged in an extreme course of action that created a foreseeable – and indeed, certain risk of injury to the Plaintiffs and all Class members.

49.     On or about February 5, 2018, LJM informed Wells Fargo of numerous risk-reducing trades that had not yet been processed, which LJM had made to protect the Portfolio.

50.     Wells Fargo knew and acknowledged that its own record of the accounts was inaccurate and incomplete and did not reflect the significant reduction of risk exposure that LJM accomplished that day.

51.     While Plaintiffs and the other Class members suffered some unrealized paper losses

on certain of their investments in the Portfolio on February 5, 2018, Wells Fargo understood the VIX spike was an anomalous temporary event. Wells Fargo knew that if the markets stabilized or recovered (as they did in a matter of hours on February 6, 2018), LJM was well positioned to avoid or recover most of the unrealized paper losses.

52.     LJM advised Wells Fargo that if the market changed, LJM was in the best position to contain and manage the scope of the losses for the Plaintiffs and other Class members who held the substantial interests in the Portfolio to avoid realizing losses of more than $500 million and as much as $800 million for Plaintiffs and the other Class members.

<u>Wells Fargo Inflicts Massive Losses on Plaintiffs and the Class</u>

53.     On the evening of February 5, 2018, Wells Fargo sent out a position statement and margin request for the Preservation Fund. In its litigation against Wells Fargo, LJM claims that based on the positions it actually held after the close of trading on February 5, 2018, LJM had more than sufficient funds available in its cash account at Union Bank to cover the margin requirements. LJM had often wired funds from Union Bank for this very purpose in the past.

54.     Wells Fargo's statement and accompanying margin request was supposed to reflect the true state of the Portfolio. However, Wells Fargo's end-of-day position statement was inaccurate and failed to incorporate risk-reducing trades LJM made that afternoon. Wells Fargo knew that its statement was based upon materially incomplete and incorrect information, but nonetheless demanded exorbitantly high margin deposits based upon this inaccurate information.

55.     Under the terms of the FCM Agreements, margin deposits were not due until the end of the next trading day (*i.e.*, on February 6, 2018). Thus, on the morning of February 6, 2018, LJM was not in default and was still in full compliance with its obligations under the Agreement, regardless of how the margin requirements were calculated. Wells Fargo could not have issued

any legitimate notice of default.

56.     Nonetheless, at around 6:00 a.m. on February 6, 2018, hours before the markets opened, Wells Fargo contacted LJM by phone and terminated its position as FCM for the Preservation Fund and the Partnership Funds. Wells Fargo then immediately and maliciously ordered and orchestrated the immediate liquidation of the entire Portfolio and Portfolio Assets without any legal right to do so.

57.     At the time and at all other relevant times, Wells Fargo knew  that its conduct would create a foreseeable, certain risk of injury to Plaintiff and all Class members and knew the fact that the Portfolio was owned beneficially by Plaintiffs and the other members of the Class, who were the Portfolio investors and the beneficial owners of the proceeds in the various accounts at Wells Fargo.

58.     Wells Fargo's phone call was followed by a formal letter, which it had written on February 5, 2018, and sent to LJM Fund, L.P. at its offices in Chicago, Illinois at 7:36 a.m. on February 6, 2018, expressly terminating the FCM Agreements for its convenience, purportedly as of right under § 24 of the FCM Agreements. However, Wells Fargo did not invoke any "Event of Default" under § 19 of the FCM Agreements or give any other basis for its termination. A true and correct copy of the termination letters are attached hereto as Exhibit B.

59.     Wells Fargo terminated its FCM Agreements in the early morning hours of February 6, including with the Partnership Funds, Preservation Fund, LJM and its affiliates under §24 of the FCM Agreements.  When it did so, Wells Fargo knew that LJM was not trading for its own benefit, but rather was trading for the benefit of Plaintiff and all investors in the Preservation Fund and Partnership Funds, whose assets were in the Portfolio Assets in Wells Fargo accounts. When Wells Fargo terminated, it also eliminated any limitations on remedies including any

contractual limitations on remedies to third party beneficiaries, such as Plaintiffs and other Class members.

60.     Contrary to the terms of the FCM Agreements, which gave LJM a fair and full opportunity to transfer its positions to another FCM or close them out in an orderly manner, early in the morning of February 6, 2018, Wells Fargo maliciously ordered and demanded that LJM immediately liquidate the entire Portfolio and Portfolio Assets.

61.     Instead of permitting LJM to manage the liquidation of the Portfolio and to protect the Plaintiffs and all Class members' assets in an orderly fashion or afford a reasonable opportunity to transfer the positions to another FCM, in breach of the Agreements, Wells Fargo recklessly forced LJM to wholly liquidate the Portfolio and all of its assets in a commercially unreasonable manner. In addition, among its other unlawful conduct, Wells Fargo also forced LJM to enter into short sales of futures that LJM did not hold or own, without any authority to do so.

62.     When Wells Fargo demanded and directed that LJM immediately liquidate the entire Portfolio early in the morning of February 6, 2018, hours before the markets opened and in the midst of the volatility event , Wells Fargo maliciously acted in violation of the interests of LJM and not for the benefit of Plaintiffs and the other members of the Class, who were the Portfolio investors and the beneficial owners of the proceeds in the various accounts at Wells Fargo.  Nor was Wells Fargo acting in its purported capacity as agent of LJM.

63.     In ordering and demanding that LJM immediately liquidate the Portfolio early in the morning on February 6, 2018, Wells Fargo acted on its own initiative and was not executing or clearing any trading instruction from LJM. Nor did Wells Fargo do so in its purported capacity as agent of LJM.

64.     Wells Fargo took those actions early in the morning on February 6, 2018, without

any legal authority or right to order or direct the immediate liquidation of all of the interests held by Plaintiffs and the other Class members in the Portfolio.

65.     Wells Fargo took these precipitous and unlawful actions although it knew they were based upon false and incomplete information concerning the content of the Portfolio, and although Wells Fargo knew the true risk level in the Portfolio already had been substantially reduced.

66.     None of LJM's three other futures commission merchants, F.C. Stone, Bank of America/Merrill Lynch, or RBC, terminated their FCM agreements with LJM or ordered LJM to liquidate any of its positions.

67.     When Wells Fargo terminated its FCM Agreements early in the morning on February 6, 2018, LJM was contractually entitled to the option of "promptly" closing out open trades *or* "promptly" transferring all open positions to another FCM in a reasonable manner.

68.     By demanding and orchestrating the immediate liquidation of the Portfolio Assets early in the morning on February 6, 2018, hours before the markets even opened, Wells Fargo denied LJM its contractual right to "promptly" close out all open trades or "promptly" transfer all open positions to another FCM in a reasonable manner.  As a direct consequence, it was reasonably foreseeable – indeed – it was certain, that Plaintiffs and all Class members investments would be immediately wiped out by the forced liquidation.

69.     After receiving the notice from Wells Fargo, LJM claims in its litigation against Wells Fargo that it had every intention of carrying out its responsibilities under § 24 of the FCM Agreements. In particular, LJM planned to carry out its tested liquidation and risk management procedures to wind down the portfolio in a steady and orderly fashion, or else to transfer some or all of the positions to another FCM.

70.     Had Wells Fargo given LJM sufficient time to act, LJM claims in its litigation

against Wells Fargo that it could have sought to transfer its positions to one of its other brokers. Alternatively, left to its proper devices, as required under the FCM Agreements, LJM claims it could have conducted an orderly exit from its options positions by the end of the trading day on February 6, 2018.

71.    Wells Fargo, however, maliciously demanded and directed an immediate forced liquidation of all of LJM's positions before the markets even opened, using trading mechanisms prescribed by Wells Fargo. It did so knowing that the Plaintiffs and all members of the Class could lose their entire investments.

72.    Due to Wells Fargo's directions and demands, in violation of § 24 of the FCM Agreements, LJM was never given the opportunity to wind down its positions in a steady and orderly manner or to transfer the Portfolio Assets to another FCM, as was its right under the FCM Agreements.

73.    Wells Fargo did not merely demand and direct that LJM liquidate its existing, open options positions. Rather, Wells Fargo also instructed LJM to conduct an immediate bulk "short" sale of E-MINI S&P 500 futures (the "E-MINI futures").

74.    Contrary to the FCM agreement, Wells Fargo improperly asserted complete authority to act and control the Portfolio, in which Plaintiffs and the other Class members held partnership and beneficial interests.  As a direct and proximate result of its egregious conduct, Wells Fargo knew that Plaintiffs and all Class members would be unable to protect themselves and were certain to lose their entire investments.

75.    LJM did not own or hold any "long" E-MINI futures positions, or any other S&P futures positions. Thus, Wells Fargo was giving the extraordinary direction to short sell futures positions that LJM did not own and did so  knowing Plaintiffs and the Class members would

sustain irreparable injury.

76.     Wells Fargo's order to short sell the E-MINI futures was not based upon a considered evaluation that such transactions were an appropriate way to unwind the LJM portfolio. Wells Fargo's account professionals did not know how to unwind the Portfolio in an appropriate manner to control risk. They were, however, apparently familiar with the common E-MINI futures contract and knew that trades in those contracts could be executed quickly and in large volumes. They acted recklessly and without any authority to do so.

77.     Thus, Wells Fargo's professionals ordered LJM to conduct massive short sales of E-MINI futures, even though the short sales could devastate the capital value of the Portfolio.

78.     LJM claims in its litigation against Wells Fargo that it never would have short sold E-MINI futures on its own accord. Indeed, LJM claims the P&G Fund (the largest LJM fund held at Wells Fargo) *never* traded E-MINI futures in its entire eight-year history.

79.     Selling futures contracts directly (like E-MINI futures) can be a way of offsetting put option positions of the sort held by LJM in part of its overall portfolio. But Wells Fargo knew or should have known that doing so is an extremely dangerous and unadvisable way to unwind an options portfolio like that held by LJM. Thus, trading E-MINI futures before the markets opened on February 6, 2018, reasonably would be expected to have a catastrophic effect on Plaintiffs and all Class members.

80.     Moreover, in the hours before the market opened on February 6, 2018, the relatively illiquid after-hours market had extreme and unusual spreads between futures and cash markets. Any experienced market professional, however, would have been aware that price movements in the after-hours market were not reliable sources of market information, given the highly illiquid trading conditions in that market.

81.     Wells Fargo knew the effect of trading E-mini futures before the market opened on February 6, 2018, reasonably would be to have a catastrophic and uniform effect upon Plaintiffs and all class members. In the hours before the market opened, the relatively illiquid after-hours market had extreme and unusual spreads between futures and cash markets.

82.     Wells Fargo knew that selling futures on February 6, 2018, without waiting for the market to open and adjust, would immediately realize and lock in brutal unrealized paper losses to the Portfolio for the Plaintiffs and all Class members from the prior day. At the same time, Wells Fargo also knew that selling E-MINI futures would recklessly unbalance the Portfolio, thus exposing the entire Portfolio, Plaintiffs and all other Class members to further serious injury and irreversible losses when the market corrected and stabilized (which it did only hours later on February 6, 2018).

83.     In the absence of Wells Fargo's willful and malicious conduct, LJM would not have traded the Portfolio Assets as directed by Wells Fargo and the Portfolio would not have incurred the massive losses it suffered.  But for Wells Fargo's malicious conduct, Plaintiffs and all Class members would not have lost all of their investments.

84.     Notwithstanding the same, Wells Fargo's message to LJM in the early morning hours on February 6, 2018, was loud and clear: if LJM did not carry out the E-MINI futures trades, Wells Fargo would simply seize control of the Portfolio and Portfolio Assets and conduct the liquidating trades itself.

85.     To enforce its egregious demands – and to drive home that Wells Fargo and not LJM was in control of the disposition of the Portfolio Assets on the morning of February 6, 2018 – Wells Fargo sent two of its own employees to LJM's offices in Chicago, Illinois.  These Wells Fargo employees further engaged in a course of conduct which resulted in a wrongful liquidation.

The Wells Fargo employees arrived at LJM's offices in Chicago before the markets opened and stayed there through the end of the day.  The employees exercised dominion and control and provided directives to LJM, resulting in Plaintiffs and all other Class members suffering additional, irreversible and catastrophic losses on that day.

86.     Wells Fargo also failed to exercise industry standards of due care.  Its employee representatives were not trained in a sufficient manner consistent with industry standards, and Wells Fargo's conduct resulted in an immediate and irreversible wrongful liquidation of all the Portfolio Assets.  No trained employee would have acted or performed in such a manner.

87.     LJM's fears concerning Wells Fargo's misguided prescription quickly were realized. The sale of E-MINI futures resulted in massive losses to the portfolio, even before the options markets opened. In addition, the sale left the overall portfolio dangerously unbalanced. As explained, in the ordinary course of business, LJM carefully hedged its book: it sold both put options (betting against a market fall) and call options (betting against a market rise). The rapid sale of E-MINI futures had the effect of closing out the open put option positions, while leaving the call option positions open and intact. This left the Portfolio wholly exposed if the markets stabilized or recovered, a typical development on the day after an anomalous market move.

88.     Although the market did stabilize and recover by mid-morning on February 6, 2018, by 11:00 a.m., Wells Fargo directed LJM to cease trading E-MINI futures. However, by then, Wells Fargo's course of conduct had already caused massive and irreversible damage and injury for Plaintiffs and the other Class members. The put side of LJM's book had been unwound, and the best that LJM could do was to attempt to limit the damage suffered by Plaintiffs and the other Class members on the now completely unhedged Portfolio.

89.     By the end of the trading day on February 6, 2018, (3:15 p.m.), per Wells Fargo's

malicious, untimely unauthorized and self-interested instructions, LJM had completely unwound the Portfolio with disastrous results and catastrophic losses to the Plaintiffs and all Class members, losing more than $500 million and as much as $800 million in the Portfolio. LJM claims in its litigation against Wells Fargo that approximately $90 million alone resulted from the unlawful sales of E-MINI futures trades directed by Wells Fargo and its employees.

90.     If Wells Fargo had not ordered an immediate, complete liquidation in less than 5 hours, but simply maintained the positions it had on the morning of February 6 or had allowed LJM to exercise its right to transfer open positions to another FCM, LJM contends that the investors' Portfolio and Portfolio Assets would have been up by approximately 10%, instead of suffering irreversible, complete destruction. LJM further avers that had it been allowed to carry out its practiced risk containment procedures, Plaintiffs and all class members would not have incurred the realized losses of more than $500 million and as much as $800 million they have suffered.

91.     If LJM had not been forced to liquidate the Portfolio, but consistent with § 24 of the FCM Agreements, simply transferred the positions it had on the morning of February 6th to another FCM, LJM's accounts would have been up by 10% later that same day.

92.     Alternatively, absent Well Fargo's intentional interference and its inciting a breach of contract between LJM, Plaintiffs and all Class members, LJM could have carried out its own portfolio wind down procedures, with the intent of closing out or transferring its positions in an orderly fashion. If Wells Fargo had not incited and caused a forced liquidation of the Portfolio and its assets, Plaintiffs and other Class members would not have suffered the loss of their principal investments.

93.     Instead, by the end of the trading day (3:15 p.m.), per Wells Fargo's instructions,

LJM had completely unwound the Portfolio with disastrous results, losing more than $500 million and as much as $800 million in realized trading losses for Plaintiffs and the other Class members.

<u>Wells Fargo Then Attempts to Rescind Its Termination the Same Day</u>

94.     During the day on February 6, 2018, as Wells Fargo forced the entire liquidation of the Portfolio, and its assets, Wells Fargo came to realize that its termination under § 24 of the FCM Agreements eliminated purported limitations on contractual remedies Wells Fargo previously claimed under the Agreements before terminating them. The termination also eliminated the parties' prior disclaimer of Wells Fargo's fiduciary duties and any contractual limitation on Wells Fargo's liability including to Plaintiffs and all Class members.

95.     Thus, having irrevocably terminated the FCM Agreements – and after causing LJM to completely liquidate the Portfolio Assets to the extreme detriment and injury suffered by Plaintiffs and the other Class members – Wells Fargo abruptly tried to reverse course and purported to unilaterally "reinstate" its former contractual rights. Undoubtedly, Wells Fargo hoped that doing so would help it avoid responsibility for the Portfolio's massive losses Plaintiffs and the other Class members realized that day.

96.     Just two minutes after the close of trading on February 6, 2018, after Wells Fargo's precipitous, willful and malicious actions before the trading day began caused Plaintiffs and the other Class members to realize catastrophic losses, and in the utmost bad faith, Wells Fargo then sent its letter to LJM purporting to "rescind" its termination notice from earlier that morning and to "reinstate" the Agreements – in effect, reversing the very basis upon which it premised the involuntary liquidation of all Portfolio Assets – even though there were no longer open positions remaining in the Portfolio after Wells Fargo forced the entire wrongful liquidation.

97.     Although Wells Fargo lost its right to demand margin after terminating the FCM

Agreements, on February 8, 2018, Wells Fargo then purported to make a margin call upon LJM in the amount of $16.4 million.

### TOLLING OR NON-ACCRUAL OF STATUTES OF LIMITATION

98.     Despite Plaintiffs' exercise of reasonable due diligence, Wells Fargo, has never disclosed any of the material facts set forth in this Complaint to Plaintiffs or Class members through the present date.

99.     To the contrary, Wells Fargo has continued to fraudulently conceal the facts including as to how it forced the wrongful liquidation upon LJM through the present date. Plaintiffs learned of some of the actions of Wells Fargo, through their due diligence and independent investigation, which is continuing throughout the present date. Plaintiffs have retained counsel to pursue this action against Wells Fargo for the catastrophic losses sustained by Plaintiffs and the Class members of more than $500 million and as much as $800 million.

100.     Wells Fargo has fraudulently acted to prevent Plaintiffs and the Class members from reasonably discovering the facts constituting Wells Fargo's conduct and violations of law. Wells Fargo has never disclosed and has fraudulently concealed its conduct from Plaintiffs and class members through the present date and refused to produce necessary documents after demand.

101.     Many of the facts alleged herein were not directly disclosed to Class members through the present date, including:

> a.   that Wells Fargo demanded and maliciously  coerced LJM into the complete liquidation of the Portfolio Assets despite the fact that LJM had the capacity to execute risk-reducing trades in 2018, that would have eliminated or substantially reduced the risk of realized losses;

> b.   that Wells Fargo forced LJM to execute the liquidation of the Portfolio and the

trades, including the identities of the persons ordering LJM to execute massive short sales of E-MINI futures that LJM did not own;

c.   that LJM ordered the complete liquidation of the Portfolio based upon an explicit threat that Wells Fargo otherwise would seize control of the Portfolio Assets and conduct the liquidating trades itself;

d.   that Wells Fargo sent at least two unsupervised and insufficiently trained employees to LJM's offices before the markets opened on February 6, 2018, who remained there throughout the day engaging in directions to liquidate the Portfolio;

e.   that Wells Fargo did not claim an event of default by LJM when it purported to terminate the FCM Agreements;

f.   the conduct surrounding Wells Fargo's attempts to rescind its termination of the FCM Agreements,,which was after the investors' Portfolio had been completely liquidated.

102.   Wells Fargo has willfully refused to produce any information to Plaintiffs concerning its forced liquidation or to agree to any other procedural or substantive protections for the Class members in the Partnership Funds and Preservation Fund through the present date.

103.   Wells Fargo has willfully failed to provide and/or disclose the facts concerning its wrongful liquidation and conduct to the Plaintiffs and the other Class members through the present date.

104.   Further, because Plaintiffs and all Class members could not have reasonably discovered the material facts constituting Wells Fargo's violations of law until recently in 2021, due to Wells Fargo's continued fraudulent conduct, their claims accrued no earlier than 2021 and

any applicable statutes of limitations have been tolled until the present date.

105.    By virtue of Wells Fargo's malicious conduct and its failure to disclose its conduct concerning the liquidation to Plaintiffs and all Class members through the present date, Wells Fargo is also equitably estopped from relying on any applicable statutes of limitations as a defense to this action.

## CLASS ACTION ALLEGATIONS

106.    Plaintiffs bring this action on their own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class:

> a.    all persons and entities who had purchased or otherwise acquired shares in the Preservation and Growth Fund and held such shares on February 5 and 6, 2018 (the "Preservation Fund Sub-Class"); and
>
> b.    all persons and entities who had purchased or otherwise acquired partnership interests in the Partnership Funds and held such interests on February 5 and 6, 2018 (the "Partnership Funds Sub-Class").

Excluded from the Class and the Sub-Classes are Wells Fargo, its affiliates and subsidiaries, and all directors and officers thereof, LJM and any related entities, and all directors and officers thereof, and their immediate families.

107.    The Class easily satisfies the requirements of Rule 23(a), as well as 23(b)(1)(B) and (b)(3). Wells Fargo's conduct was uniform as to Plaintiffs and all members of the Class.

108.    Numerosity. The members of Class are so numerous that joinder of all members is impracticable. The size and composition of Class, which is estimated to include thousands of Class members, can only be ascertained through discovery.

109.    Typicality. Plaintiffs' claims are typical of the claims of the other members of the

Class as all members of the Class were similarly affected by Wells Fargo's uniform conduct as to the Portfolio, and its forced liquidation of the same, in which Plaintiffs and all Class members held ownership interests. Additional material specific facts can only be ascertained through discovery.

110.   <u>Adequacy.</u> Named Plaintiffs have and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action litigation, and securities and commodities related litigation.

111.   <u>Commonality.</u> Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. The questions of law and fact common to the class include:

   a.   whether Wells Fargo breached its duties to the Plaintiffs and the members of the Class;

   b.   whether Wells Fargo is liable to the Plaintiffs and the other Class members for forcing the immediate liquidation of the entire Portfolio after giving notice of termination and maliciously engaging in a course of conduct which seriously injured the Plaintiffs and the other members of the Class, and otherwise causing irreversible losses to Plaintiffs and the other Class members;

   c.   whether Wells Fargo had a legal right to force the immediate liquidation of the Portfolio and its assets;

   d.   whether Wells Fargo is liable to Plaintiffs and the Class members for gross negligence, fraud, tortious interference with contractual relations, tortious interference with business relations, breach of contract, negligent supervision, breach of implied covenant of good faith and fair dealing, and aiding and abetting breach of fiduciary duties as alleged herein; and

e.   whether Plaintiffs and the Class members are entitled to compensatory damages due to Wells Fargo's willful conduct and, if so, what measure of damages is proper;

f.   whether Plaintiffs and the Class members are entitled to punitive or exemplary damages due to Wells Fargo's malicious course of conduct and, if so, what measure of damages is proper.

112.   <u>Predominance and Superiority</u>. The questions of law and fact common to the Class members predominate over any questions affecting only individual members. A class action under Rule 23(b)(3) is also superior to all other available methods for the fair and efficient adjudication of this controversy.

113.   Because the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for Plaintiff and the members of the Class to individually redress the wrongs done to them. There will be no unusual difficulty in the management of this action as a class action.

**COUNT ONE**
**<u>GROSS NEGLIGENCE</u>**

114.   Plaintiffs incorporate by reference the foregoing allegations as contained in paragraphs 1 through 113 as if fully set forth herein.

115.   Plaintiffs bring this claim for gross negligence on behalf of all members of the Class.

116.   It was reasonably foreseeable – in fact, certain - that Plaintiffs, and Class members, as investors in the Portfolio and owners of the Portfolio Assets, would be injured by any unauthorized and deliberate action taken with respect to the Portfolio or the investments in the Portfolio. Thus, Wells Fargo knew how its forced liquidation would cause irreversible injury and

loss of principal to the Plaintiffs and all Class members.  Accordingly, Wells Fargo owed a duty of care to Plaintiffs.

117.    Wells Fargo engaged in a willful and wanton course of misconduct.

118.    Wells Fargo engaged in bad faith and malfeasance when it ordered the sale of E-MINI futures, and forced the immediate wrongful liquidation of the Portfolio.

119.    Wells Fargo's actions constituted an extreme departure from applicable industry standards, including but not limited to ordering of the immediate massive short sale of E-MINI futures.

120.    Wells Fargo knew that it was responsible for preserving the safety and security of monies, securities, and property that Plaintiffs paid, delivered, and entrusted to Wells Fargo with respect to their ownership and beneficial interests in the Portfolio Assets.

121.    Wells Fargo knew that the Plaintiffs imposed special trust and confidence in Wells Fargo, who was in a position of superiority and control over Plaintiffs.

122.    Wells Fargo did in fact exercise complete dominion and control over the Portfolio and Plaintiffs' interests therein, and it was charged with the duty and responsibility to implement and comply with all rules and procedures to maintain such property and collateral and to ensure that those assets were not used, sold, applied, or liquidated for any improper purpose, including the self-interests of Wells Fargo or its affiliates to the extreme detriment of Plaintiffs.

123.    As such, Wells Fargo owed Plaintiffs a duty of care to preserve and protect their customer funds and property and collateral to preserve these assets and to act solely in their best interests in connection with Wells Fargo's custody and control of the Portfolio and their assets, and to avoid any self-dealing or conduct on behalf of Wells Fargo to the detriment of Plaintiffs.

124.    Wells Fargo knew, that by virtue of its actual position, it could unlawfully exercise

complete control over the Portfolio Assets.

125.    Wells Fargo was grossly negligent and breached its duties owed to Plaintiffs and all Class members by, among other things, intentionally, knowingly, recklessly, willfully, or gross negligently:

      a.  directing, authorizing, and causing the untimely, irreversible liquidation of the Portfolio;

      b.  ordering and directing the sale of E-MINI futures; and

      c.  employing irreversible procedures which had the foreseeable effect of resulting in catastrophic losses to Plaintiffs.

126.    Wells Fargo knew that the liquidation and forced sale of funds including E-MINI futures and collateral funds and its direction of the wrongful liquidation would have catastrophic consequences to Plaintiffs and members of the Class.

127.    The Defendant knowingly breached its legal duties to Plaintiffs and members of the Class, by among other things:

      a.  failing to exercise due diligence concerning the Portfolio Assets and Plaintiffs' interests therein;

      b.  failing to provide any advance notice to Plaintiffs and in order to prevent the untimely and irreversible liquidation of the Portfolio;

      c.  causing and ordering customer assets and collateral to be untimely and recklessly liquidated to the extreme detriment and injury of Plaintiffs.

128.    As a direct, proximate, and foreseeable consequence of the gross negligence of Wells Fargo, as alleged herein, Plaintiffs and all members of the Class have lost virtually all of their money, principal, securities, and property in the Portfolio and have been damaged thereby in

an amount to be determined by a jury at trial.

## COUNT TWO
## FRAUD

129.     Plaintiffs incorporate by reference the foregoing allegations as contained in paragraphs 1 through 113 above as if fully set forth herein.

130.     It was reasonably foreseeable that Plaintiffs and the Class members, as investors in the Portfolio and owners of Portfolio Assets, would be injured by any unauthorized, deceptive or malicious action taken with respect to the Portfolio or the investments in the Portfolio. Thus, Wells Fargo owed a duty of care to Plaintiffs and all Class members, including the duty to act honestly with respect to Plaintiffs and all Class members.

131.     With the intent to deceive, Wells Fargo engaged in a deceptive and willful course of conduct, in which it exercised complete dominion and control over the Portfolio and ordered and enforced its liquidation in a matter of several hours. It failed to disclose to Plaintiffs and to other members of the Class the material facts known to Wells Fargo as set forth herein, including that Wells Fargo had ordered the sale of E-MINI futures and intended to force the immediate and entire liquidation of the Portfolio in the early morning hours on February 6, 2018.

132.     Wells Fargo had a legal duty to the Plaintiffs and members of the Class to alert them and disclose its actions because it had superior knowledge of the referenced material facts concerning its ordering of the wrongful liquidation, in only a matter of hours, and because its actions of February 6 were irreversible and would likely result in irreparable injury and catastrophic losses to Plaintiffs and the Class.

133.     In addition, Plaintiffs and the members of the Class imposed trust and confidence in Wells Fargo to disclose its actions and to do so prior to engaging in its wrongful liquidation which would irreparably harm the Plaintiffs and the members of the Class.

134.     Wells Fargo knew it was in an actual position of influence, dominion, superiority, and control over the Portfolio and the interests of Plaintiffs and the other members of the Class in the Portfolio and exercised the same as to the Partnership Funds and the Preservation Fund.

135.     Wells Fargo's actions, had they been timely disclosed, would have been material to Plaintiffs and the other members of the Class and alerted them such that they could act and mitigate their damages. The facts known only to Wells Fargo, stated above and throughout the complaint, substantially impacted and affected the financial interests of the Partnership Funds, the Preservation and Growth Fund, and the Plaintiffs and the other members of the Class. Wells Fargo knew the non-disclosure of and suppression of its deceptive acts, conduct, and information was fraudulent and, that knowledge would result in the Plaintiffs and other members of the Class sustaining hundreds of millions of dollars in losses, which were preventable and could have been avoided.

136.     By virtue of Wells Fargo's knowledge of the facts stated throughout this complaint, it knew that Plaintiffs and other members of the Class would not have expected Wells Fargo to take such actions, which were irreversible. Wells Fargo acted with scienter and alternatively, with reckless disregard for the rights and interests of Plaintiffs and all other Class members.

137.     Wells Fargo, for its own self-motivated interests, acted with a fraudulent intent to deceive Plaintiffs and other members of the Class.

138.     Wells Fargo knew the foreseeable consequences of: (a) its misappropriation and conversion of Plaintiffs interests; (b) its failure to timely disclose its actions to the Plaintiffs and class members; and (c) its failure to warn the Plaintiffs and other members of the Class, which would completely preclude them from protecting themselves or mitigating their losses.

139.     Plaintiffs and the other Class members acted in reasonable and justifiable reliance

on Wells Fargo's failure to act in good faith and fraudulent failure to disclose its deceptive acts and conduct of February 6, 2018.  Wells Fargo's suppression of its wrongful liquidation plan prevented the Plaintiffs and other Class members from protecting their ownership and beneficial interests.

140.    As a result of Wells Fargo's fraudulent actions, Plaintiffs and other members of the Class were unable to prevent the irreversible catastrophic losses.

141.    Plaintiffs and other members of the Class acted in a manner consistent with how a reasonably prudent person in their position would have acted, particularly given (i) their lack of access to the immediate and fraudulent actions of Wells Fargo; (ii) Wells Fargo's fraudulent concealment of its activities, course of conduct and bad faith; (iii) Plaintiffs' inability to detect the fraud, and (iv) the nature of the omitted disclosure of Wells Fargo's deceptive and fraudulent course of action.

142.    Had Wells Fargo timely disclosed the material information and its deceptive course of conduct to Plaintiffs and the other members of the Class, they would have been able to take action to mitigate their losses and would not have suffered the irreversible, catastrophic losses, which would have been preventable.

143.    As a direct and proximate result of Wells Fargo's fraudulent conduct and failure to disclose its conduct, Plaintiffs and the other members of the Class suffered irreversible losses.

144.    Wells Fargo also knew the Partnership Funds and Preservation Fund mutual fund invested in by Plaintiffs were regulated funds, which raised specific regulatory requirements concerning the management, handling, and liquidation of those funds.

145.    Wells Fargo knew that it was not permitted to order and direct the sale of previously non-existent E-MINI futures in its account and convert the Portfolio Assets which were not pre-

existing collateral.

146.    Because Wells Fargo knew that the Portfolio Assets were intended for investment, preservation, and security, Wells Fargo was well aware of the regulatory restrictions concerning such accounts, and their liquidation. Wells Fargo also knew that it was subject to certain regulatory requirements concerning account liquidation and compliance with all regulatory requirements.

147.    Wells Fargo had a duty to Plaintiffs to protect and safeguard the Portfolio Assets.

148.    Wells Fargo breached its duty to Plaintiffs in the manner described above and below, as follows:

  a.  it failed to exercise reasonable due diligence concerning the Portfolio and the interests of Plaintiffs;

  b.  it failed to implement and adhere to regulatory compliance, monitoring, and legitimate liquidation protocols concerning the Portfolio and interests of Plaintiffs and thereby engaged in a deceptive and wrongful liquidation;

  c.  it failed to employ adequate risk mitigation techniques in a reasonable and timely manner and prevented LJM, Plaintiffs from doing so.

  d.  it failed to timely notify Plaintiffs, the CFTC, or any governmental regulators about Wells Fargo's scheme to involuntarily liquidate Plaintiffs' funds and without the legal right to do so; and

  e.  it caused the assets of Plaintiffs to be liquidated and irreversible injury to Plaintiff and Class members.

149.    As a direct, proximate, and foreseeable consequence of the Wells Fargo's fraudulent and deceptive conduct as described throughout this complaint, Plaintiffs and the other members of the Class have lost more than $500 million and as much as $800 million. Plaintiffs

have been damaged thereby in an amount to be determined by a jury at trial.

150.    The irreversible harm suffered by Plaintiffs was the foreseeable result of Wells Fargo's fraudulent and deceptive conduct and was preventable, but for Wells Fargo's deliberate conduct.

151.    In addition, Plaintiffs are entitled to punitive damages because Wells Fargo acted maliciously and in bad faith in deliberate or reckless disregard of Plaintiffs' and the other Class members' rights.

**COUNT THREE**
**TORTIOUS INTERFERENCE WITH**
**CONTRACTUAL RELATIONS**

152.    Plaintiffs incorporate by reference the foregoing allegations as contained in paragraphs 1 through 113 as if fully set forth herein.

153.    Plaintiffs bring this claim and on behalf of all members of the Class.

154.    Plaintiffs and all members of the Class entered into valid and enforceable subscription contracts and executory  investment contracts with the Partnership Funds, and the Preservation Fund, with LJM to manage the Portfolio Assets for the Partnership Funds and the Preservation Fund, which required the Funds and LJM and the Funds to act prudently, reasonably, and responsibly for their best interests and to protect the Portfolio Assets.

155.    At all times material, since 2015, Wells Fargo knew and was aware of the contractual agreements and obligations LJM owed to Plaintiffs and the other Class members concerning the Partnership Funds and the Preservation Fund.

156.    Wells Fargo, intentionally and without any justification, maliciously induced, incited, and forced LJM to breach its contracts with Plaintiffs and its contractual duties to Plaintiffs and the Class members by unilaterally forcing the entire liquidation of the Portfolio Assets.

157.    Wells Fargo, intentionally and without justification, maliciously  induced, incited,

and forced a breach of the contract with LJM, the Partnership Funds, and the Preservation Fund when it forced the immediate wrongful liquidation and sale of all Plaintiffs' interests in the Portfolio Assets.

158.    As a direct, proximate, and foreseeable result of Wells Fargo's tortious interference with contractual relations, breach and wrongful conduct, Plaintiffs and other members of the Class have suffered substantial losses and irreparable injury.

159.    In addition, Plaintiffs and members of the Class are entitled to punitive damages because Wells Fargo acted maliciously and in bad faith in deliberate or reckless disregard of Plaintiffs' and the other Class members' rights.

## COUNT FOUR
## TORTIOUS INTERFERENCE
## WITH BUSINESS RELATIONS

160.    Plaintiffs incorporate by reference the foregoing allegations as contained in paragraphs 1 through 113 as if fully set forth herein.

161.    Plaintiffs bring this claim on their behalf and on behalf of all members of the Class.

162.    Wells Fargo knew that virtually all the proceeds from the Subscription Agreements with the Partnership Funds and the Preservation Fund were deposited and maintained, including with Wells Fargo and constituted the Portfolio and were held for the benefit of Plaintiffs and the other Class members.

163.    Wells Fargo knew that the funds were received for the purpose of trading regulated futures contracts and segregated pursuant to CFTC regulations.

164.    Plaintiffs and all Class members entered into valid executory and enforceable business relationships with LJM Fund, L.P., the Partnership Funds and the entities whose investors were invested in the Portfolio.

165.     Plaintiffs and the Class members entered into valid, executory and enforceable business relationships with the Preservation Fund, whose investors were invested in the Portfolio.

166.     At all times material, Wells Fargo knew and was aware of the business relations and obligations between Plaintiffs, all members of the Class, the Partnership Funds (including the LJM Fund, L.P.), and the Preservation Fund and the entities whose investors were invested in the Portfolio.

167.     Wells Fargo, intentionally, without justification, and maliciously induced, incited, and forced a breach of the business relationships between Plaintiffs, members of the Class, LJM Fund, L.P., and the entities whose investors were invested in the Portfolio.

168.     Wells Fargo, intentionally, without justification, and maliciously induced, incited, and forced a breach of the business relationships between Plaintiffs, members of the Class, and Preservation Fund and the entities whose investors were invested in the Portfolio.

169.     Wells Fargo, intentionally, without justification, and maliciously induced, incited, and forced a breach of the business relationships when it forced the complete liquidation and sale of the Portfolio and all of Plaintiffs' interests in the Portfolio.

170.     As a direct, proximate, and foreseeable result of Wells Fargo's tortious interference with business relations between Plaintiffs and LJM Fund, L.P. and the entities whose investors were invested in the Portfolio, Plaintiffs and the Class members suffered substantial losses and irreparable injury.

171.     In addition, Plaintiffs and the Class members are entitled to punitive damages because Wells Fargo acted maliciously and in bad faith in deliberate or reckless disregard of Plaintiffs rights.

## COUNT FIVE
## NEGLIGENT SUPERVISION

172.    Plaintiffs incorporate by reference the foregoing allegations as contained in paragraphs 1 through 113 as if fully set forth herein.

173.    Plaintiffs bring this claim on behalf of all members of the Class.

174.    As an employer, Wells Fargo owed a duty of care to Plaintiffs and all members of the Class to adequately train, supervise, oversee, and direct the activities of their employees in connection with the obligations and legal duties of a futures commission merchant.

175.    Wells Fargo also had a duty to adequately train and supervise the employees it sent to LJM's offices on February 6, 2018, who engaged in conduct which caused irreparable injury to Plaintiffs and Class members.

176.    Wells Fargo negligently trained, supervised, directed, and oversaw its employees and permitted them to engage, outside of the scope of their authority, in the immediate bulk sale of E-MINI futures and implement the enforcement of the immediate liquidation of the Portfolio early in the morning on February 6, 2018, destroying the entire value of the Plaintiffs' interests therein.

177.    Wells Fargo and its negligently trained and negligently supervised employees, wrongfully converted the Portfolio Assets and the Plaintiffs' and Class members' interests therein without any legal right to do so.

178.    As a direct, proximate, and foreseeable result of Wells Fargo's negligent supervision of its employees, the negligence caused and resulted in the losses of Plaintiffs and all members of the Class.

## COUNT SIX
## BREACH OF CONTRACT

179.    Plaintiffs incorporate by reference the foregoing allegations contained in

paragraphs 1 through 113 as if fully set forth herein.

180.    Wells Fargo entered into the FCM Agreement with LJM Fund, L.P. on March 31, 2015.

181.    Wells Fargo owed contractual duties and obligations to the LJM Fund, L.P.

182.    On February 6, 2018, Wells Fargo breached its contract with LJM Fund, L.P., including when it engaged in the conduct alleged above, including but not limited to the following acts:

> a.    Wells Fargo invoked the termination clause in Section 24 of its contract in the absence of an Event of Default;
>
> b.    Wells Fargo ordered, directed, and forced a wrongful liquidation of the Portfolio of LJM Fund, L.P. in a matter of several hours on February 6, 2018;
>
> c.    Wells Fargo forced the wrongful liquidation of the Portfolio of LJM Fund, L.P., instead of allowing the Fund and LJM to close out the open positions in the Wells Fargo account in a commercially reasonable manner or to permit a reasonable opportunity for the transfer of the positions to another FCM; and
>
> d.    Wells Fargo directed the sale of existing option positions by entering into short sales of futures that were not previously held or owned by the LJM Fund, L.P.

183.    When Wells Fargo engaged in the conduct alleged above, it breached its contractual duties owed to LJM Fund, L.P.

184.    As a result of the dissolution of LJM Fund, L.P., Plaintiffs and the other Class

members now assert this breach of contract claim on behalf of the LJM Fund, L.P. directly against Wells Fargo and seek damages in an amount to be proven at trial.

**COUNT SEVEN**
**BREACH OF THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**

185.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 113 above as if they were fully set forth herein.

186.    Wells Fargo exercised complete authority to act and control the Portfolio of the LJM Funds L.P. ("Fund") in which Plaintiffs and Class members held partnership and beneficial interests.

187.    Plaintiffs and the other members of the Class owned partnership and beneficial rights and interests in the Portfolio of the Fund and its assets.

188.    At all relevant times, Wells Fargo knew or recklessly disregarded the fact that Plaintiffs and the other members of the Class owned partnership and beneficial rights and interests in the Portfolio of the Fund and its assets.

189.    At all times material, including prior to and after Wells Fargo terminated the FCM Agreementsas alleged above, Plaintiffs and the other members of the Class were owed an implied covenant of good faith and fair dealing, pursuant to which Wells Fargo was bound to exercise reasonable conduct in good faith and to deal fairly with the rights and interests of Plaintiffs and Class members in the Fund and its Portfolio and otherwise safeguard, and protect their interests.

190.    To the extent that Wells Fargo was authorized to act, it was only permitted to do so in a reasonable manner, *i.e.* only to the extent it was lawful and only to the extent its course of conduct did not cause foreseeable, irreversible losses to Plaintiffs and the members of the Class.

191.    Nonetheless, Wells Fargo willfully embarked upon a course of action which it

knew or should have known would have foreseeable, certain , and irreversible consequences for the Plaintiffs and class members, as set forth herein.

192.    By virtue of its breach of the implied covenants of good faith and fair dealing, Wells Fargo has breached its contractual obligations owed to LJM Fund, L.P., Plaintiffs and all members of the Class.

193.    In addition, Wells Fargo was fully aware that it had a duty with regard to the rights and interests of Plaintiffs and the Class members in the Fund and its Portfolio including an implied covenant of good faith and fair dealing.

194.    To the extent that Wells Fargo acted as set forth herein, it was obligated not to act in bad faith for its own financial gain for the purposes of maximizing its own profits at the expense of and to the extreme detriment of LJM Fund, L.P. and Plaintiffs and other members of the Class.

195.    Wells Fargo breached its duties of good faith and fair dealing in at least the following respects, among others:

a.    failing to make any effort to maintain and secure LJM, Fund L.P.'s rights and interests in the Portfolio;

b.    acting instead solely to maximize its own interests by forcing LJM to untimely and recklessly liquidate the Plaintiffs assets and ownership and beneficial interests in the Portfolio;

c.    using its position and practical control to force a wrongful liquidation of the Fund's Portfolio in bad faith and in contravention of the parties' reasonable expectations, by purposefully forcing the liquidation of the Portfolio to the extreme detriment of Plaintiffs and all members of the Class;

d.    failing to exercise due diligence to protect the Plaintiff's rights and interests

in the Portfolio;

e.      failing to make good faith efforts to protect and secure the Fund's and Plaintiffs' rights and interests in the Fund's Portfolio, and instead forcing a wrongful liquidation of the entire Portfolio to serve the self-interests of Wells Fargo;

f.      failing to timely provide Plaintiffs and members of the Class with any opportunity to protect their investments; and

g.      failing to employ or implement reasonable risk mitigation techniques or to allow LJM to do so during the period February 5-6, 2018, including but not limited to affording LJM a reasonable time (even one day), to transfer the open positions in the Fund's Portfolio to another FCM.

196.    As a direct, proximate, and foreseeable consequence of Wells Fargo's breaches of covenant of good faith and fair dealing, Plaintiffs and all the other members of the Class have suffered substantial damages in an amount to be proven at trial.

197.    Wells Fargo undertook these actions in bad faith and they were not intended to benefit Plaintiffs or the members of the Class.

198.    As a direct, proximate, and foreseeable result of Wells Fargo's actions, Plaintiffs and other members of the Class have suffered irreversible catastrophic losses.

199.    Plaintiffs and the Class are entitled to all damages resulting from Wells Fargo's breach of its implied covenant of good faith and fair dealing.

200.    In addition, Plaintiffs and the Class are entitled to punitive damages because Wells Fargo acted maliciously and in bad faith in deliberate or reckless disregard of the Fund, Plaintiffs and the other Class members' rights.

**COUNT EIGHT**
**BREACH OF CONTRACT**

201.    Plaintiffs incorporate by reference the foregoing allegations contained in paragraphs 1 through 113 as if fully set forth herein.

202.    Wells Fargo entered into the FCM Agreement contract with the Partnership Funds in 2015, including PFC-LJM Fund, L.P. ("Fund").

203.    Wells Fargo owed contractual duties and obligations to the Partnership Funds.

204.    On February 6, 2018, Wells Fargo breached its contract with the Partnership Funds, including when it engaged in the conduct alleged above, including but not limited to the following acts:

      a.    Wells Fargo invoked the termination clause in Section 24 of its contract in the  absence of an Event of Default;

      b.    Wells Fargo ordered, directed, and forced a wrongful liquidation of the Partnership Funds and their Portfolio in a matter of several hours on February 6, 2018;

      c.    Wells Fargo forced the wrongful liquidation of the Partnership Funds and its Portfolio, instead of allowing the Funds and LJM to close out the open positions in the Wells Fargo account in a commercially reasonable manner or to permit a reasonable opportunity for the transfer of the positions to another FCM; and

      d.    Wells Fargo directed the sale of existing option positions by entering into short sales of futures that were not previously held or owned by the Partnership Funds.

205.    When Wells Fargo engaged in the conduct alleged above, it breached its contractual

duties owed to the Partnership Funds.

206.    As a result of the liquidation of the Partnership Funds, as alleged above, Plaintiffs and the other Class members now assert this breach of contract claim on behalf of the Partnership Funds directly and seek damages in an amount to be proven at trial.

**COUNT NINE**
**BREACH OF THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**

207.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 113 above as if they were fully set forth herein.

208.    Wells Fargo exercised complete authority to act and control the Partnerships' Portfolio, in which Plaintiffs and Class members held partnership and beneficial interests.

209.    Plaintiffs and the members of the Class owned partnership and beneficial rights and interests in the Partnerships' Portfolio and its assets of the Partnership Funds.

210.    At all relevant times, Wells Fargo knew or recklessly disregarded the fact that Plaintiffs and the other members of the Class owned partnership and beneficial rights and interests in the Portfolio of the Fund and its assets.

211.    At all times material, including prior to and after Wells Fargo terminated the FCM Agreements as alleged above, Plaintiffs and members of the Class were owed an implied covenant of good faith and fair dealing, pursuant to which Wells Fargo was bound to exercise reasonable conduct in good faith and to deal fairly with the rights and interests of Plaintiffs and Class members in the Portfolio and otherwise safeguard, and protect their interests.

212.    To the extent that Wells Fargo was authorized to act, it was only permitted to do so in a reasonable manner, *i.e.* only to the extent it was lawful and only to the extent its course of conduct did not cause foreseeable, irreversible losses to Plaintiffs and members of the Class.

213.     Nonetheless, Wells Fargo willfully embarked upon a course of action which it knew or should have known would have foreseeable, adverse, and irreversible consequences for the Partnerships, the Plaintiffs and class members, as set forth herein.

214.     By virtue of its breach of the implied covenants of good faith and fair dealing, Wells Fargo has breached its contractual obligations owed to the Partnership Funds, Plaintiffs and all members of the Class.

215.     In addition, Wells Fargo was fully aware that it had a duty with regard to the rights and interests of the Partnerships, Plaintiffs and the Class members including an implied covenant of good faith and fair dealing.

216.     To the extent that Wells Fargo acted as set forth herein, it was obligated not to act in bad faith for its own financial gain for the purposes of maximizing its own profits at the expense of and to the extreme detriment of the Partnership Funds and Plaintiffs and other members of the Class.

217.     Wells Fargo breached its duties of good faith and fair dealing in at least the following respects, among others:

    a.     failing to make any effort to maintain and secure the Partnership Funds' rights and interests in the Portfolio;

    b.     acting instead solely to maximize its own interests by forcing LJM to untimely and recklessly liquidate the Partnerships' Portfolio and Plaintiffs assets, ownership and beneficial interests in the Portfolio;

    c.     using its position and practical control to force a wrongful liquidation of the Partnerships' Portfolio in bad faith and in contravention of the parties' reasonable expectations, by purposefully forcing the liquidation of the

Partnerships' Portfolio to the extreme detriment of Plaintiffs and all members of the Class;

d.    failing to exercise due diligence to protect the Partnerships' and Plaintiff's rights and interests in their Portfolio;

e.    failing to make good faith efforts to protect and secure the Plaintiff's rights and interests in the Portfolio, and instead forcing a wrongful liquidation of the entire Partnerships' Portfolio to serve the self-interests of Wells Fargo;

f.    failing to timely provide Plaintiffs and members of the class with any opportunity to protect their investments; and

g.    failing to employ or implement reasonable risk mitigation techniques or to allow LJM to do so during the period February 5-6, 2018, including but not limited to affording LJM a reasonable time (even one day), to transfer the open positions in the Portfolio to another FCM.

218.    As a direct, proximate, and foreseeable consequence of Wells Fargo's breaches of covenant of good faith and fair dealing, Plaintiffs and all the other members of the Class have suffered substantial damages in an amount to be proven at trial.

219.    Wells Fargo undertook these actions in bad faith and they were not intended to benefit Plaintiffs or the members of the Class.

220.    As a direct, proximate, and foreseeable result of Wells Fargo's actions, Plaintiffs and other members of the Class have suffered irreversible catastrophic losses.

221.    Plaintiffs and the Class are entitled to all damages resulting from Wells Fargo's breach of its implied covenant of good faith and fair dealing.

222.    In addition, Plaintiffs and the Class are entitled to punitive damages because Wells

Fargo acted maliciously and in bad faith in deliberate or reckless disregard of Plaintiffs and the other Class members' rights.

**COUNT TEN**
**BREACH OF CONTRACT**

223.    Plaintiffs incorporate by reference the foregoing allegations contained in paragraphs 1 through 113 as if fully set forth herein.

224.    Wells Fargo entered into an FCM Agreement contract with the Preservation and Growth Fund in 2015.

225.    Wells Fargo owed contractual duties and obligations to the Preservation and Growth Fund.

226.    On February 6, 2018, Wells Fargo breached its contract with the Preservation and Growth Fund, including when it engaged in the conduct alleged above, including but not limited to the following acts:

  a.    Wells Fargo invoked the termination clause in Section 24 of its contract in the   absence of an Event of Default;

  b.    Wells Fargo ordered, directed, and forced a wrongful liquidation of the Preservation and Growth Fund and its portfolio in a matter of several hours on February 6, 2018;

  c.    Wells Fargo forced the wrongful liquidation of the Portfolio of the Preservation and Growth Fund, instead of allowing the Fund and LJM to close out the open positions in the Wells Fargo account in a commercially reasonable manner or to permit a reasonable opportunity for the transfer of the positions to another FCM; and

  d.    Wells Fargo directed the sale of existing option positions by entering into

short sales of futures that were not previously held or owned by the Preservation Fund.

227.    When Wells Fargo engaged in the conduct alleged above, it breached its contractual duties owed to the Preservation Fund.

228.    As a result of the liquidation and dissolution of the Preservation Fund, as alleged above, Plaintiffs and the other Class members now assert this breach of contract claim on behalf of the Preservation Fund against Wells Fargo and seek damages in an amount to be proven at trial.

**COUNT ELEVEN**
**BREACH OF THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**

229.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 113 above as if they were fully set forth herein.

230.    Wells Fargo exercised complete authority to act and control the Portfolio, in which the Preservation and Growth Fund, Plaintiffs and Class held interests.

231.    Plaintiffs and members of the Class owned shares in the Preservation and Growth Fund and rights and interests in the Portfolio and its assets.

232.    At all relevant times, Wells Fargo knew the fact that Plaintiffs and the other members of the Class owned partnership and beneficial rights and interests in the Portfolio of the Fund and its assets.

233.    At all times material, including prior to and after Wells Fargo terminated the FCM Agreements as alleged above, the Preservation and Growth Fund, and Plaintiffs and members of the Class were owed an implied covenant of good faith and fair dealing, pursuant to which Wells Fargo was bound to exercise reasonable conduct in good faith and to deal fairly with the rights and interests of the Preservation and Growth Fund, and Plaintiffs and Class members in the Portfolio

and otherwise safeguard, and protect their interests.

234.    To the extent that Wells Fargo was authorized to act, it was only permitted to do so in a reasonable manner, *i.e.* only to the extent it was lawful and only to the extent its course of conduct did not cause foreseeable, irreversible losses to Plaintiffs and members of the Class.

235.    Nonetheless, Wells Fargo willfully embarked upon a course of action which it knew or should have known would have foreseeable, certain , and irreversible consequences for the Plaintiffs and class members, as set forth herein.

236.    By virtue of its breach of the implied covenants of good faith and fair dealing, Wells Fargo has breached its contractual obligations owed to the Preservation and Growth Fund, Plaintiffs and all members of the Class.

237.    In addition, Wells Fargo was fully aware that it had a duty with regard to the rights and interests of Plaintiffs and the Class members including an implied covenant of good faith and fair dealing.

238.    To the extent that Wells Fargo acted as set forth herein, it was obligated not to act in bad faith for its own financial gain for the purposes of maximizing its own profits at the expense of and to the extreme detriment of the Preservation and Growth Fund and Plaintiffs and other members of the Class.

239.    Wells Fargo breached its duties of good faith and fair dealing in at least the following respects, among others:

    a. failing to make any effort to maintain and secure the Preservation and Growth Fund's rights and interests in the Portfolio;

    b. acting instead solely to maximize its own interests by forcing LJM to untimely and recklessly liquidate the Fund's and Plaintiffs assets and

ownership and beneficial interests in the Portfolio;

c.     using its position and practical control to force a wrongful liquidation of the Preservation Fund's Portfolio in bad faith and in contravention of the parties' reasonable expectations, by purposefully forcing the liquidation of the Portfolio to the extreme detriment of Plaintiffs and all members of the Class;

d.     failing to exercise due diligence to protect the Fund and Plaintiff's rights and its interests in the Portfolio;

e.     failing to make good faith efforts to protect and secure the Fund and Plaintiff's rights and its interests in the Portfolio, and instead forcing a wrongful liquidation of the entire Portfolio to serve the self-interests of Wells Fargo;

f.     failing to timely provide the Fund, Plaintiffs and members of the class with any opportunity to protect their investments; and

g.     failing to employ or implement reasonable risk mitigation techniques or to allow LJM to do so during the period February 5-6, 2018, including but not limited to affording LJM a reasonable time (even one day), to transfer the open positions in the Fund's Portfolio to another FCM.

240.     As a direct, proximate, and foreseeable consequence of Wells Fargo's breaches of covenant of good faith and fair dealing, Plaintiffs and all the other members of the Class have suffered substantial damages in an amount to be proven at trial.

241.     Wells Fargo undertook these actions in bad faith solely for its own benefit and were not intended to benefit the Fund, Plaintiffs, or the members of the Class.

242.    As a direct, proximate, and foreseeable result of Wells Fargo's actions, the Fund and Plaintiffs and other members of the Class have suffered irreversible catastrophic losses.

243.    Plaintiffs and the Class are entitled to all damages resulting from Wells Fargo's breach of its implied covenant of good faith and fair dealing.

244.    In addition, Plaintiffs and the Class are entitled to punitive damages because Wells Fargo acted maliciously and in bad faith in deliberate or reckless disregard of Plaintiffs and the other Class members' rights.

## COUNT TWELVE
## BREACH OF CONTRACT

245.    Plaintiffs incorporate by reference the foregoing allegations as contained in paragraphs 1 through 113 as if fully set forth herein.

246.    Wells Fargo and LJM Partners and LJM Fund, L.P. entered into an FCM Agreement concerning LJM Fund, L.P in 2015.

247.    At all times relevant hereto, from prior to the inception of the FCM contract in 2015 and at all times through February 6, 2018, Wells Fargo knew:

    a.    LJM served as the general partner and manager of the Fund for the actual and direct benefit of the Fund's investors, including Plaintiffs and Class members; and

    b.    The plaintiffs and Class member investors held ownership and beneficial interests in the Portfolio of LJM Fund, L.P. at Wells Fargo.

248.    Wells Fargo knew the Plaintiffs and other investors in the fund were the actual intended third-party beneficiaries of the FCM contract.

249.    Wells Fargo owed contractual duties to Plaintiffs and the Class of Fund investors under the FCM contract.

250.    Wells Fargo breached its contracts with Plaintiffs and the Class members in the fund as the third-party beneficiaries of the FCM Agreement and contract on February 5-6, 2018.

251.    Wells Fargo breached its contracts with LJM, for the benefit of Plaintiffs and Class members, by committing the acts and omissions alleged herein in breach of the FCM Agreement.

252.    Wells Fargo attempted to disavow the existence of any third-party beneficiary in the Futures Agreement concerning the LJM Fund, L.P. Wells Fargo's attempt to do so is contrary to public policy and ignores the actual third-party status of the Plaintiffs. Further, Wells Fargo's attempts to negate the investors status is contrary to public policy, is void, and unenforceable.

253.    By virtue of Wells Fargo's breach of contract, the plaintiffs and Class members suffered damages in an amount to be proven at trial.

## COUNT FOURTEEN
## BREACH OF CONTRACT

254.    Plaintiffs incorporate by reference the foregoing allegations as contained in paragraphs 1 through 113 as if fully set forth herein.

255.    Wells Fargo and LJM entered in the FCM Agreement concerning the Partnerships.

256.    At all times relevant hereto, from prior to the inception of the FCM contract in 2015, and at all times through February 6, 2018, Wells Fargo knew:

      a.    LJM served as the general partner and manager of the Partnerships for the actual and direct benefit of the Fund's investor parties, including Plaintiffs and Class members; and

      b.    The plaintiffs and Class of investors held ownership and beneficial interests in the Portfolio of the Partnerships and Wells Fargo.

257.    Wells Fargo knew the Plaintiffs and the Class members were the intended third party beneficiaries of the FCM contract.

258.    Wells Fargo owed contractual duties to Plaintiffs and the Class members under the FCM contract.

259.    Wells Fargo breached its contracts with Plaintiffs and the Class members as the third-party beneficiaries of the FCM Agreement and contract.

260.    Wells Fargo breached its contracts with LJM, for the benefit of Plaintiffs and Class members, by committing the acts and omissions alleged herein in breach of the FCM Agreement.

261.    Wells Fargo attempted to disavow the existence of any third-party beneficiary in the futures agreement. Wells Fargo's attempt to do so is factually incorrect and is also contrary to public policy, void, and unenforceable.

262.    By virtue of Wells Fargo's breach of contract, the plaintiffs and Class members suffered damages in an amount to be proven at trial.

**COUNT SIXTEEN**
**BREACH OF CONTRACT**

263.    Plaintiffs incorporate by reference the foregoing allegations as contained in paragraphs 1 through 113 as if fully set forth herein.

264.    Wells Fargo, LJM Funds Management and the Preservation and Growth Fund ("Fund") entered in FCM Agreements concerning the Preservation and Growth Fund.

265.    At all times relevant hereto, from prior to the inception of the FCM contract in 2015, and at all times through February 6, 2018, Wells Fargo knew:

      a.    LJM Funds Management served as the investment advisor and manager of the Fund's Portfolio for the actual and direct benefit of the Fund's investor parties, including Plaintiffs a and Class members; and

      b.    The plaintiffs and Class of investors held ownership and beneficial interests in the Portfolio of the Preservation Fund.

266.     Wells Fargo knew the Plaintiffs and the Class members were the intended third party beneficiaries of the FCM Agreement.

267.     Wells Fargo owed contractual duties to Plaintiffs and the Class members in the Preservation Fund under the FCM contract.

268.     Wells Fargo also breached its contracts with Plaintiffs and the Class members as the third-party beneficiaries of the FCM Agreement and contract.

269.     Wells Fargo breached its contracts with LJM Funds Management, for the benefit of Plaintiffs and Class members, by committing the acts and omissions alleged herein in breach of the FCM Agreement.

270.     Wells Fargo attempted to disavow the existence of any third-party beneficiary in the Futures Agreement. Wells Fargo's attempt to do so ignores the actual third-party status of the Fund's investors. Further, Wells Fargo's attempt to negate the investors status is also contrary to public policy, is void, and unenforceable.

271.     By virtue of Wells Fargo's breach of contract, the plaintiffs and Class members suffered damages in an amount to be proven at trial.

**COUNT EIGHTEEN**
**AIDING AND ABETTING**
**BREACH OF FIDICUARY DUTY**

272.     Plaintiffs incorporate by reference the foregoing allegations contained in paragraphs 1 through 113 as if fully set forth herein.

273.     LJM Partners and LJM Fund, L.P. owed a fiduciary duty to Plaintiffs and the Partnership Funds Sub-Class members.

274.     Wells Fargo knew that LJM and the Fund owed a fiduciary duty to the limited partners of LJM Fund, L.P ("Fund") and the Partnerships.

275.    Wells Fargo, with malicious intent, committed the acts alleged above and by doing so, aided and abetted LJM Partners' breach of fiduciary duty to Plaintiff and the Partnership Funds Sub-Class .

276.    Wells Fargo, with the intent to defraud, aided and abetted the liquidation of the Portfolio resulting in the Plaintiffs' and other Partnership Funds Sub-Class members' loss of their investments.

277.    Wells Fargo knew, when it directed, coerced, and forced LJM to engage in a wrongful liquidation, in breach of its fiduciary duties owed to Plaintiff and Class members, that it was aiding and abetting the breach of a fiduciary duty by LJM Partners, for which Plaintiffs and Class members are entitled to damages from Wells Fargo in an amount to be proven at trial.

**COUNT NINETEEN**
**AIDING AND ABETTING**
**BREACH OF FIDICUARY DUTY**

278.    Plaintiffs incorporate by reference the foregoing allegations contained in paragraphs 1 through 113 as if fully set forth herein.

279.    LJM and the Partnerships owed a fiduciary duty to Plaintiffs and the Partnership Funds Sub-Class .

280.    Wells Fargo knew that the Fund and LJM owed a fiduciary duty to the limited partners of the Partnerships.

281.    Wells Fargo, with malicious intent, committed the acts alleged above.

282.    Wells Fargo knew, when it directed, coerced, and forced LJM and the Partnerships to engage in a wrongful liquidation in breach of its fiduciary duties owed to Plaintiff and the Partnership Funds Sub-Class that it was aiding and abetting the breach of a fiduciary duty, for which Plaintiffs and the Partnership Funds Sub-Class are entitled to damages from Wells Fargo in

an amount to be proven at trial.

## COUNT TWENTY
## AIDING AND ABETTING
## BREACH OF FIDICUARY DUTY

283.    Plaintiffs incorporate by reference the foregoing allegations contained in paragraphs 1 through 113 as if fully set forth herein.

284.    LJM Funds Management and the Preservation Fund ("Fund") owed fiduciary duties to Plaintiffs and the members of the Preservation Fund Sub-Class.

285.    Wells Fargo knew that LJM Funds Management and the Fund owed fiduciary duties to Plaintiffs and the shareholders in the Preservation Fund.

286.    Wells Fargo, with malicious intent, committed the acts alleged above. By doing so, Wells Fargo aided and abetted LJM Partners breach of fiduciary duty to Plaintiffs and the Preservation Fund Sub-Class members.

287.    Wells Fargo, with the intent to defraud, aided and abetted the liquidation of the Preservation Fund's Portfolio resulting in the Plaintiffs and the Preservation Fund Sub-Class members' loss of investment.

288.    Wells Fargo knew, when it directed, coerced, and forced LJM Funds Management and the Preservation Fund to engage in a wrongful liquidation in breach of its fiduciary duties owed to Plaintiffs and the Preservation Fund Sub-Class members that it was aiding and abetting the breach of a fiduciary duty by LJM Funds Management, for which Plaintiffs and the Preservation Fund Sub-Class members are entitled to damages from Wells Fargo in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or

individually, as follows:

A.      Certifying the action as a class action, with Plaintiffs and their counsel as representatives of the Class;

B.      Awarding Plaintiffs and the other members of the Class compensatory damages, together with interest and costs of suit;

C.      Awarding Plaintiffs and the other members of the Class punitive damages; and

D.      Awarding Plaintiffs and the other members of the Class such other relief as this Court deems just and proper.

### JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED:  February 3, 2023          By:     /s/ Carl V. Malmstrom
                                          Carl V. Malmstrom
                                          WOLF HALDENSTEIN ADLER
                                           FREEMAN & HERZ LLC
                                          111 W. Jackson Blvd., Suite 1700
                                          Chicago, IL 60604
                                          (312) 984-0000
                                          malmstrom@whafh.com

                                          Mark C. Rifkin
                                          WOLF HALDENSTEIN ADLER
                                           FREEMAN & HERZ LLP
                                          270 Madison Avenue
                                          9th Floor
                                          New York, NY 10016
                                          (212) 545-4600
                                          rifkin@whafh.com

                                          Kenneth Gilman, Esquire
                                          GILMAN LAW LLP
                                          Beachway Professional Center Tower
                                          8951 Bonita Beach Road, S.E.
                                          Suite 525
                                          Bonita Springs, FL 34135

Telephone: (239) 571-3518
kgilman@gilmanlawllp.com

*Attorneys for Plaintiffs and the Class*